Appeal No. 10-1193

United States Court of Appeals
for the Seventh Circuit

Lisa M. Graczyk, Matthew M. Jorge,
and Brian Willingham, individually
and on behalf of all others similarly
situated,

    Plaintiffs,

 v.

West Publishing Corp., a Minnesota
corporation,

    Defendant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 1:09-cv-04760
The Honorable Judge Robert W. Gettleman

Brief and Required Short Appendix of
Plaintiffs-Appellants Lisa M. Graczyk,
Matthew M. Jorge, and Brian Willingham

Ben Barnow
Barnow and Associates, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
(312) 621-2000

*Attorney for Plaintiffs-Appellants Lisa M. Graczyk,
Matthew M. Jorge, and Brian Willingham*

## CIRCUIT RULE 26.1    DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption: _____

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   [  ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   _____

   _____

   _____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   _____

   _____

   _____

(3)   If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

   _____

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

   _____

Attorney's Signature: _____   Date: _____

Attorney's Printed Name: _____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** _____

Address: _____

   _____

Phone Number: _____   Fax Number: _____

E-Mail Address: _____

# Table of Contents

Disclosure Statement ........................................................................................... i

Table of Contents ...............................................................................................ii

Table of Authorities .........................................................................................iv

Jurisdictional Statement ..................................................................................... 1

Issues Presented For Review ............................................................................. 2

Statement of the Case.......................................................................................... 3

Statement of Facts .............................................................................................. 3

Summary of Arguments....................................................................................... 8

Argument............................................................................................................ 10

I.  The District Court Erred in Granting West Publishing's Motion
    to Dismiss.................................................................................................... 10

  A. Standard of Review ................................................................................. 10

  B. West Publishing Violated the DPPA When it Obtained Plaintiffs' Personal
     Information Without a Permitted Basis Under Section 2721(b) ............................. 10

  C. Canons of Statutory Interpretation Dictate that West Publishing has Violated the
     DPPA ..................................................................................................... 16

  D. The Legal Authorities Cited by the District Court are Distinguishable and
     Contradicted by the Plain Language of the DPPA.................................................. 19

  E. The District Court's Other Points in Support of its Dismissal of Plaintiffs' Complaint
     Do Not Obviate the Fact that West Publishing Violated the DPPA......................... 20

II. The District Court Erred in Dismissing Plaintiffs' Unjust Enrichment and Injunctive
    Relief Claims ............................................................................................. 22

III. The District Court Had Subject Matter Jurisdiction Over Plaintiffs' Claims .............. 23

Conclusion ......................................................................................................... 26

Certificate Of Compliance with F.R.A.P. 32(A)(7) ....................................................... 28

Proof of Service.......................................................................................................... 29

Circuit Rule 30(d) Statement ...................................................................................... 30

**Table of Authorities**

<u>Cases</u>

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ............................................................................ 10

*Bedroc Ltd. v. United States,*
  541 U.S. 176 (2004) ................................................................................. 20

*Bell v. Hood,*
  327 U.S. 678 (1946) ................................................................................. 24

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................. 10

*Cicilline v. Jewel Food Stores, Inc.,*
  542 F. Supp. 2d 831 (N.D. Ill. 2008) ...................................................... 22

*Conroy v. Aniskoff,*
  507 U.S. 511 (1993) ........................................................................... 16, 17

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
  545 U.S. 546 (2005) ........................................................................... 16, 17

*Follman v. Village Squire, Inc.,*
  542 F. Supp. 2d 816 (N.D. Ill. 2007) ...................................................... 22

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
  545 U.S. 308 (2005) ................................................................................. 24

*Harris v. Best Buy Co.,*
  254 F.R.D. 82 (N.D. Ill. 2008) ................................................................ 22

*Hickey v. O'Bannon,*
  287 F.3d 656 (7th Cir. 2002) ................................................................... 10

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,*
  131 Ill. 2d 145, 545 N.E.2d 672 (1989) .................................................. 22

*Irvine v. 233 Skydeck, LLC,*
  597 F. Supp. 2d 799 (N.D. Ill. 2009) ...................................................... 22

*Maracich v. Spears,*
No. 09-1651, 2009 WL 2929323 (D.S.C. Sept. 8, 2009) .......................................... 15

*Matthews v. United Retail, Inc.,*
248 F.R.D. 210 (N.D. Ill. 2008) ............................................................................. 22

*McCready v. White,*
417 F.3d 700 (7th Cir. 2005) .................................................................................. 24

*Merrell Dow Pharms. Inc. v. Thompson,*
478 U.S. 804 (1986) ............................................................................................... 24

*Mills Music, Inc. v. Snyder,*
469 U.S. 153 (1985) ............................................................................................... 16

*Murray v. GMAC,*
434 F.3d 948 (7th Cir. 2006) ............................................................................ 21, 22

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,*
469 U.S. 189 (1985) ............................................................................................... 16

*Parus v. Allstate Ins. Co.,*
No. 05-C-0063-C, 2005 WL 2240955 (W.D. Wis. Sept. 14, 2005) ..................... *passim*

*Perrin v. United States,*
444 U.S. 37 (1979) ................................................................................................. 16

*Pichler v. UNITE,*
542 F.3d 380 (3d Cir. 2008) ........................................................................ 14, 15, 25

*Reiter v. Sanotone Corp.,*
442 U.S. 330 (1979) ............................................................................................... 19

*Reno v. Condon,*
528 U.S. 141 (2000) ............................................................................................... 23

*Rios v. Direct Mail Express, Inc.,*
435 F. Supp. 2d 1199 (S.D. Fla. 2006) .................................................................. 15

*Roberts v. The Source for Public Data,*
No. 08-4167-CV-C-NKL, 2008 WL 5234675 (W.D. Mo. Dec. 12, 2008) ........... *passim*

*Russell v. ChoicePoint Servs., Inc.,*
300 F. Supp. 2d 450 (E.D. La. 2004) ..................................................................... 19

v

*Russell v. ChoicePoint Servs., Inc.*,
  302 F. Supp. 2d 654 (E.D. La. 2004) ...................................................................... 19

*Russello v. United States*,
  464 U.S. 16 (1983).................................................................................................... 13

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)..................................................................................................... 24

*Taylor v. Acxiom Corp.*,
  No. 2:07-cv-0001 (E.D. Tex. Sept. 8, 2008) .............................................................. 19

*Thomas v. George, Hartz*,
  525 F.3d 1107 (11th Cir. 2008)................................................................................. 13

*United States v. Gonzales*,
  520 U.S. 1 (1997)....................................................................................................... 16

*Wiles. v. Sw. Bell Tele. Co.*,
  No. 09-4236, 2010 WL 1463025 (W.D. Mo. Apr. 13, 2010)................................. 13, 25

<u>Statutes and Rules</u>

28 U.S.C. § 1291............................................................................................................... 1

28 U.S.C. § 1332............................................................................................................... 1

18 U.S.C. § 2721(b) ..................................................................................................*passim*

18 U.S.C. § 2721(c).................................................................................................*passim*

18 U.S.C. § 2722.................................................................................... 3, 4, 12, 15, 20

18 U.S.C. § 2724........................................................................... 6, 14, 15, 19, 24

18 U.S.C § 2725............................................................................................... 4, 12

Fed. R. Civ. P. 12(b)(1)................................................................................ 3, 7, 23, 24

Fed. R. Civ. P. 12(b)(6).................................................................................... 3, 7, 25

Fed. R. Civ. P. 23 .......................................................................................................... 3

Other Authority

Black's Law Dictionary, 1078, 1268 (6th ed. 1990) .................................................... 12

*Webster's II New College Dictionary*,
  756, 924–25 (Margery S. Berube, *et al.* eds. 1995) .................................................. 12

## Jurisdictional Statement

The United States District Court for the Northern District of Illinois exercised jurisdiction over this civil action under 28 U.S.C. § 1332(d), because: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs; (2) this action was filed by Plaintiffs, on behalf of themselves and all others similarly situated, under Fed. R. Civ. P. 23; and (3) at least one proposed class member was a citizen of a state different from the defendant.

Plaintiffs-Appellants, Lisa M. Graczyk, Matthew M. Jorge, and Brian Willingham ("Plaintiffs"), are citizens of Illinois. Defendant West Publishing Company ("West Publishing") is a Minnesota corporation with its principal place of business located in Minnesota.

Jurisdiction of the Circuit Court of Appeals arises under 28 U.S.C. § 1291 (final judgment). On December 23, 2009, the District Court entered a final judgment in this matter. S.A.1; S.A.15.[1] On January 22, 2010, Plaintiffs timely filed a Notice of Appeal pursuant to 28 U.S.C. § 1291. D.E. #29. On March 12, 2010, the Court granted Plaintiffs an extension of time, until April 26, 2010, to file their opening brief and required short appendix.

---

[1] References to "S.A.__" refer to pages in the Short Appendix. References to "D.E. #__" refer to the docket number of a document in the District Court record.

1

**Issues Presented For Review**

1.     The Driver's Privacy Protection Act ("DPPA") prohibits the obtainment of Personal Information unless it falls under one of the statute's express exceptions. The DPPA allows the re-sale of Personal Information by authorized recipients, so long as the obtainment of information falls under one of the statute's express exceptions. West Publishing obtained Plaintiffs' Personal Information as part of a bulk database, but did not do so under any of the DPPA's express exceptions. Did West Publishing violate the DPPA?

2.     To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that a defendant has unjustly retained a benefit to the plaintiff's detriment, and that retention of that benefit violates principles of justice, equity, and good conscience. Plaintiffs allege that West Publishing violated and continues to violate the DPPA by obtaining their Personal Information as part of a bulk database without meeting any of the statute's express exceptions. Have Plaintiffs stated claims for unjust enrichment and injunctive relief?

3.     The DPPA provides that a civil action may be filed by any individual whose Personal Information was obtained for a purpose not permitted under the DPPA. West Publishing obtained Plaintiffs' Personal Information as part of a bulk database for a purpose that does not meet any of the DPPA's express exceptions. Do Plaintiffs have standing to bring a civil action for violation of the DPPA by West Publishing?

**Statement of the Case**

This is an appeal from an order of the United States District Court for the Northern District of Illinois ("District Court") granting West Publishing's motion to dismiss.

Plaintiffs initiated this consumer class action on behalf of themselves and all others similarly situated through the filing of their Class Action Complaint ("Complaint"), alleging that West Publishing violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2722 *et seq.*, by obtaining Plaintiffs' Personal Information without meeting any of the statute's express exceptions for obtaining said information. Re-selling Plaintiffs' Personal information for a profit is not one of the DPPA's express exceptions. D.E. #1. West Publishing filed a motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). D.E. ##12–13. On December 23, 2009, the motion was granted, and Plaintiffs' Complaint was dismissed with prejudice. D.E. ##26, 27.

Plaintiffs timely filed their Notice of Appeal on January 22, 2010. D.E. #29.

**Statement of Facts**

I.  Factual Background

Plaintiffs allege that West Publishing violated the DPPA by obtaining their Personal Information as part of a bulk database, whereby such obtainment was not authorized under any of the statute's express exceptions. Class Action Complaint ("Compl.") at ¶¶10-15. West Publishing did not claim that its conduct falls under any of the exceptions enumerated below, all of which narrowly focus on the protection and lawful obtainment of individuals' Personal Information. Nor did

3

West Publishing contend that it obtained the express consent of Plaintiffs or any other member of the putative Class to obtain their Personal Information.

## II. Statutory Background

Under the DPPA, personal information is defined as:

> information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information . . . .

18 U.S.C. § 2725(3) (hereinafter referred to as "Personal Information").

The DPPA states: "[i]t shall be unlawful for any person knowingly *to obtain* or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a) (emphasis added). The DPPA defines "person" to include entities. 18 U.S.C. § 2725(2). The DPPA categorically prohibits obtaining Personal Information unless the obtainment falls within one of the exceptions in § 2721(b):

> (1)     For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
>
> (2)     For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.
>
> (3)     For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only--(A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and (B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by pursuing

4

legal remedies against, or recovering on a debt or security interest against, the individual.

(4)    For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

(5)    For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

(6)    For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

(7)    For use in providing notice to the owners of towed or impounded vehicles.

(8)    For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.

(9)    For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49 [49 USCS §§ 31301 et seq.].

(10)   For use in connection with the operation of private toll transportation facilities.

(11)   For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

(12)   For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

(13)   For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

(14)    For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

18 U.S.C. § 2721(b)(1)–(14).

Section 2721(c) of the DPPA limits re-sale or re-disclosure of an individual's

Personal Information to "authorized recipient[s]":

(c) Resale or redisclosure. An authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or redisclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b) (11) or (12)). An authorized recipient under subsection (b)(11) may resell or redisclose personal information for any purpose. An authorized recipient under subsection (b)(12) may resell or redisclose personal information pursuant to subsection (b)(12). Any authorized recipient (except a recipient under subsection (b)(11)) that resells or rediscloses personal information covered by this chapter [18 USCS §§ 2701 *et seq.*] must keep for a period of 5 years records identifying each person or entity that receives information and the permitted purpose for which the information will be used and must make such records available to the motor vehicle department upon request.

Under the DPPA, Plaintiffs can bring a civil action for West Publishing's alleged

violations, and a court may award:

(1) actual damages, but not less than liquidated damages in the amount of $2,500;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorneys' fees and other litigation costs reasonably incurred; and

(4) such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2724.

III. Procedural Background

On September 30, 2009, West Publishing filed a motion to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). D.E.#12. On December 23, 2009, the District Court granted West Publishing's motion. S.A.1. The District Court found that West Publishing was an authorized recipient under § 2721(c) of the DPPA, and dismissed Plaintiffs' claim that West Publishing violated the DPPA when it obtained Plaintiffs' Personal Information as part of a bulk database. S.A.1. The District Court also dismissed Plaintiffs' claims for unjust enrichment and injunctive relief on the ground that Plaintiffs' failed to sufficiently state a claim that West Publishing violated the DPPA. S.A.12-13. The District Court further held that Plaintiffs' failed to allege that they suffered any injury, and that the District Court therefore lacked subject matter jurisdiction over their DPPA claims. S.A.11-12.

## Summary of Arguments

The DPPA makes it unlawful for business entities to obtain individuals'
Personal Information unless the business entity obtains it under one of the express
exceptions listed in § 2721(b). Under § 2721(c), the DPPA allows authorized
recipients to re-sell Personal Information, but a business entity cannot become an
authorized recipient unless it obtains the Personal Information for one of these
explicit exceptions. West Publishing obtained Plaintiffs' Personal Information as
part of a bulk database, and said obtainment did not fall under any of the DPPA's
express exceptions. West Publishing is therefore not an authorized recipient, and
contrary to the District Court's ruling, West Publishing violated the DPPA and
Plaintiffs sufficiently alleged a claim for same in their Complaint. The plain
language of the DPPA compels such a conclusion, and there is no need to look to any
congressional intent behind the statute where the DPPA's language is clear and
unambiguous on its face.

Likewise, based on West Publishing's violation of the DPPA, it was unjustly
enriched to the detriment of Plaintiffs when it obtained Plaintiffs' Personal
Information. Moreover, West Publishing continues the practice of obtaining
Plaintiffs' Personal Information as part of a bulk database, and injunctive relief is
appropriate here to halt this unlawful conduct. The District Court's ruling
dismissing Plaintiffs' claims in this regard should therefore be reversed.

Additionally, because Plaintiffs sufficiently allege that West Publishing violated
the DPPA, was unjustly enriched, and that its continuing unlawful conduct must be

stopped, Plaintiffs' Complaint states an injury-in-fact that confers subject matter jurisdiction over their claims. The District Court's conclusions to the contrary are belied by the plain language of the DPPA and the majority of courts addressing these issues. Thus, the dismissal of Plaintiffs' Complaint should be reversed, and this case remanded for further proceedings on the merits.

**Argument**

I.  The District Court Erred in Granting West Publishing's Motion to Dismiss.

A.  Standard of Review

This Court reviews a district court's granting of a motion to dismiss *de novo. See, e.g., Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002). In so doing, the Court must accept a complaint's well-pled allegations as true and draw all favorable inferences for the plaintiff. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009). The Supreme Court of the United States stated that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and that Rule 8 "does not require 'detailed factual allegations.'" *Iqbal*, 129 S. Ct at 1949. To survive a motion to dismiss, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

B.  West Publishing Violated the DPPA When it Obtained Plaintiffs' Personal Information Without a Permitted Basis Under Section 2721(b).

West Publishing was not an authorized recipient of Plaintiffs' Personal Information when it obtained said information as part of a bulk database and, therefore, West Publishing violated the DPPA. Not having obtained Plaintiffs' Personal Information under any of the DPPA's express exceptions, West Publishing had no valid basis to do anything with the information—much less re-sell it for a profit—and the District Court erred in finding otherwise. The District Court's ruling

is based on an incorrect interpretation of the plain language of the DPPA, and reversal is appropriate.

Interpretation of the plain language of a statue is province of a court; courts are not, however, in the business of determining the policies of Congress. The District Court's rationale that actually adhering to the plain language of the DPPA would create an "absurd result" and cause others great inconvenience is not a valid reason for ignoring the plain text of the statute and dismissing Plaintiffs' Complaint.

Plaintiffs sufficiently allege that West Publishing violated the DPPA by obtaining Plaintiffs' and the other putative Class members' Personal Information because it was not an authorized recipient. Thus, any subsequent activity—such as its conduct here, re-sale to the general public for a profit—is improper.

*Roberts v. The Source for Public Data*, 2008 WL 5234675, at *1 (W.D. Mo. Dec. 12, 2008), is directly on point here. There, one of the defendants, Shadowsoft, Inc., obtained a database of individuals' Personal Information from the Missouri Department of Revenue, and then sold that database to another defendant, Public Data, who made that information available to the public. *Id.* There, the defendants argued that § 2721(c) of the DPPA expressly provides for and allows the re-sale of Personal Information, "no matter the purpose for which that entity obtained the information, so long as the re-sale or re-disclosure is to individuals who have a permissible purpose for obtaining the information under section 2721(b)." *Id.* at 3. But, *Roberts* held that such a reading of the DPPA runs contrary to the plain meaning of the statute, as "a recipient becomes authorized only by virtue of

obtaining the information for a reason listed in section 2721(b)." *Roberts*, 2008 WL 5234675, at *3.

As the DPPA expressly states, it is unlawful for business entities to "obtain . . . personal information . . . for any use not permitted under section 2721(b)." 18 U.S.C. § 2722. As the *Roberts* court aptly held:

> Section 2722's prohibition on *obtaining* information for any purpose other than one listed in section 2721(b) makes no sense if under section 2721(c) a business entity is allowed to *receive* personal information for the purpose of re-selling or re-disclosing it to others whose uses would fall under exceptions in section 2721(b)—a purpose for which there is no exception in section 2721(b).

*Roberts*, 2008 WL 5234675, at *4 (emphasis in original).[2]

The *Roberts* court reached its conclusion according to ordinary definitions of the words "obtain" and "receive", as each "indicate that one has taken or acquired possession of some thing." *Id.* (citing Black's Law Dictionary 1078, 1268 (6th ed. 1990); *Webster's II New College Dictionary* 756, 924–25 (Margery S. Berube, *et al.* eds. 1995)). Thus, under the plain meaning and reading of the DPPA, "an 'authorized recipient' is one authorized to receive (or obtain) something; one who is prohibited from obtaining something cannot also be an 'authorized recipient' of it." *Id.*

As a result, West Publishing cannot plausibly maintain the position it is an authorized recipient because it did not obtain Plaintiffs' Personal Information for

---

[2] The court in *Roberts* later certified the following class: "All licensed drivers in the state of Missouri whose highly restricted personal information from their motor vehicle record, as defined by 18 U.S.C. § 2725, was obtained, disclosed, or used by the Defendants, or any agent, officer, employee or contractor, therefor[SIC] from July 21, 2004 to present in violation of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, *et. seq.*" *Roberts v. Source for Public Data*, No. 08-cv-04167, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009).

any permissible purpose. "Congress could have included an additional exception in section 2721(b) to allow business entities to obtain highly restricted personal information for the purpose of reselling or re-disclosing it to others with permissible uses; it did not do so." *Roberts*, 2008 WL 5234675, at *4. Such a holding is consistent with cannons of statutory interpretation. *See, e.g., Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)). The District Court's finding that "the logical conclusion is that the individual states can make [the] decision" of who is an authorized recipient conflicts with long-standing principles of statutory interpretation. S.A.7.

A similar result was reached in *Wiles. v. Southwestern Bell Tele. Co.*, No. 09-4236, 2010 WL 1463025, at *1 (W.D. Mo. Apr. 13, 2010), where the plaintiffs alleged that the defendants "obtained and/or disclosed their information for commercial purposes and profit—purposes which are not specifically allowed by the DPPA." In denying the defendants' motion to dismiss, the court held that the plaintiffs' allegation plainly stated a cause of action against the defendants for violating the DPPA. *Wiles*, 2010 WL 1463025, at *3.

Without being an authorized recipient, West Publishing's liability becomes clear. As the court held in *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008):

> In a straightforward fashion, section 2724(a) sets forth three elements giving rise to liability, i.e., that a defendant (1) knowingly obtained, disclosed or used personal information, (2) from a motor vehicle record, (3) for a purpose not permitted. The plain meaning of the third factor is that it is only satisfied if shown that obtainment, disclosure, or use was not for a purpose enumerated under § 2721(b).

*See also Pichler v. UNITE*, 542 F.3d 380, 395 (3d Cir. 2008) ("Because UNITE obtained and used the confidential information for an impermissible purpose—union organizing—it does not matter what other permissible purpose UNITE may have had."). West Publishing obtained Plaintiffs' Personal information for no permissible purpose, and therefore cannot be an authorized recipient under the plain language of the DPPA.

Plaintiffs do not assert that West Publishing does not potentially have the right to obtain the Personal Information of some individuals. Rather, Plaintiffs assert that obtaining any person's information must be for a permissible purpose under the plain language of the statute. For example, if West Publishing, as an agent, first receives a valid request for Personal Information, it then may be allowed to request that individual's information from the state on behalf of its principal. As enumerated above, however, West Publishing obtained Plaintiffs' and the Class' Personal Information as part of a bulk database and for no permissible purpose under the plain language of the DPPA. "Section 2724(a) makes a[n] [entity] liable when [it] knowingly obtains personal information from a motor vehicle record for a purpose not permitted under the Act regardless whether [it] proceeds to disclose or use the information." *Parus v. Allstate Ins. Co.*, 2005 WL 2240955, at *4 (W.D. Wis. Sept. 14, 2005). As an unauthorized recipient of Plaintiffs' Personal Information,

West Publishing had no right to possess the information, let alone re-sell it for a profit.

Pichler's analysis of the DPPA provides further support for Plaintiffs' position:

> The statute clearly prevents obtaining or using personal information "for a purpose not permitted under this chapter...." 18 U.S.C. § 2724(a). . . . The DPPA lists fourteen permissible purposes in § 2721(b) and union organizing is not one of them. . . . Like the District Court, we decline to recognize an exception to the statute for which Congress has not provided.

542 F.3d at 396. Likewise, here, re-selling Personal Information for a profit is not a permissible purpose, and Plaintiffs' Complaint sufficiently alleges that West Publishing violated the DPPA. *See Maracich v. Spears*, No. 09-1651, 2009 WL 2929323, at *4 (D.S.C. Sept. 8, 2009) (denying defendant's motion to dismiss where the plaintiffs alleged, under the DPPA, that the defendants obtained their personal information to send solicitation letters without plaintiffs' consent, which the court found to be an impermissible purpose); *Rios v. Direct Mail Express, Inc.*, 435 F. Supp. 2d 1199, 1202 (S.D. Fla. 2006) (holding that "defendant knowingly obtained, disclosed, or used personal information in a manner not permitted under the [DPPA]").

Accordingly, under 18 U.S.C. § 2722(a), which refers to and incorporates the exceptions enumerated in § 2721(b), a business entity cannot legally obtain Personal Information unless it does so under one of those exceptions. West Publishing has not, and cannot, assert or argue that it obtained Plaintiffs' Personal Information as part of a bulk database under any of those exceptions, and West Publishing therefore has no basis for claiming that it is an authorized recipient.

Thus, the Court should reverse the District Court's dismissal of Plaintiffs' claim that West Publishing violated the DPPA.

## C. Canons of Statutory Interpretation Dictate that West Publishing Has Violated the DPPA.

Unless otherwise defined, words in a statute are interpreted as having their ordinary, contemporary, common meaning. *See, e.g., Perrin v. United States*, 444 U.S. 37, 42 (1979). "In construing a federal statute, it is appropriate to assume that the ordinary meaning of the language that Congress employed 'accurately expresses its legislative purpose.'" *Mills Music, Inc. v. Snyder,* 469 U.S. 153, 164 (1985) (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 195 (1985)); *see also United States v. Gonzales,* 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history."). "[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 586 (2005). Indeed, looking to the legislative history of a statute, as the District Court did here, has its pitfalls:

> We are governed by laws, not by the intentions of legislators. As the Court said in 1844: "The law as it passed is the will of the majority of both houses, *and the only mode in which that will is spoken is in the act itself...." Aldridge v. Williams,* 3 How. 9, 24, 11 L. Ed. 469 (emphasis added). But not the least of the defects of legislative history is its indeterminacy. If one were to search for an interpretive technique that, *on the whole,* was more likely to confuse than to clarify, one could hardly find a more promising candidate than legislative history.

*Conroy v. Aniskoff,* 507 U.S. 511, 519 (1993) (Scalia, J., concurring) (emphasis in original). As to what Congress may or may not have intended, Justice Scalia continues:

> When I say "Congress intended," here and hereafter in this excursus into legislative history, I am speaking as legislative historians speak, attributing to all Members of both Houses of Congress (or at least to a majority of the Members of each House), and to the President (or, if the President did not sign the bill in question, then to at least two-thirds of the Members of both Houses of Congress) views expressed by the particular personage, or committee of personages, whose statements are being described—in the case of the citation at issue in this sentence, a committee of the House of Representatives. It is to be assumed—by a sort of suspension of disbelief— that two-thirds of the Members of both Houses of Congress (or a majority plus the President) were aware of those statements and must have agreed with them; or perhaps it is to be assumed—by a sort of suspension of the Constitution—that Congress delegated to that personage or personages the authority to say what its laws mean.

*Id.* at 521 n.2; s*ee also Exxon Mobil Corp.*, 545 U.S. at 586 ("[L]egislative history is itself often murky, ambiguous, and contradictory. Judicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in 'looking over a crowd and picking out your friends.'") (internal citation omitted). Plaintiffs read Justice Scalia's forceful articulation of the matter to mean that the statements regarding a law by just one or two members of Congress—out of hundreds—should not be interpreted to represent the intent of Congress, which approved the law.

The District Court referenced select portions from congressional hearings that were held in conjunction with the passage of the DPPA from just two (2) senators. S.A.9-10. A closer look at the legislative history of the DPPA—which is wholly unnecessary in light of the statute's clear language—tells a different story, though. As Senator Boxer stated:

> I had no idea when I went into my State to get licensed that all this information that I provided was going to be made public. Those in public life

expect much of our factual data to be public but, indeed, others who are not in public life have a need to protect their privacy, particularly women.

139 Cong. Rec. S15745–01, S15764 (available at D.E. #13-2). Senator Boxer went on

to note that the DPPA "will provide individuals with knowledge of and control over

the disclosure of their personal information for uses unrelated to the purpose(s) for

which it was collected." *Id.* Representative Moran echoed these sentiments, in that

he wanted to "give[] drivers the ability to restrict release of personal information for

reasons that are totally incompatible for the reasons it was collected." 140 Cong.

Rec. H2518-01, H2522 (available at D.E. #13-2). Further, Representative Moran

noted that the DPPA:

> is designed to give individuals control over the release of their personal information and give them the opportunity to make choices as to whether this information is released, not just for individual look-ups, but also *for release in bulk.*

1994 WL 212698 (Feb. 3, 1994) (emphasis added) (available at D.E. #13-2). As

Senator Shelby so accurately articulated the matter:

> It boils down to this: We have doors on our homes so that outsiders who seek entry must knock and ask our permission to enter. When we want such people to come in, we invite them. When we do not want them in, they are not permitted to enter. Doors provide us with the means to control our interaction with other people. American citizens should have the power to put "doors" on all aspects of their private lives and to expect that anyone who wants to enter must seek and gain consent.

2000 WL 374404 (F.D.C.H.) (statement of Senator Shelby).

Here, where the language of the DPPA is clear on its face, no further inquiry is

necessary. The DPPA's use of "the disjunctive 'or' to connect the terms 'obtains,'

'discloses' and 'uses'" mandates that each term be given a separate meaning. *Parus*

18

*v. Allstate Ins. Co*, 2005 WL 2240955, at *4 (W.D. Wis. Sept. 14, 2005) (citing *Reiter v. Sanotone Corp.*, 442 U.S. 330, 337 (1979)). Additionally, "Section 2724(a) makes a person liable when he knowingly obtains personal information from a motor vehicle record for a purpose not permitted under the Act regardless whether he proceeds to disclose or use the information." *Parus v. Cator*, No. 05-C-0063, 2005 WL 2240955, at *4 (W.D. Wis. Sept. 14, 2005).

Thus, obtaining Personal Information under the DPPA is an act separate and apart from disclosing or using said information. Therefore, West Publishing's act of obtaining Plaintiffs' Personal Information as part of a bulk database, which is not one of the authorized exceptions for obtaining said information, demonstrates that West Publishing violated the DPPA, and that it cannot be an authorized recipient under the Statute's plain language.

### D. The Legal Authorities Cited by the District Court Are Distinguishable and Contradicted by the Plain Language of the DPPA.

In dismissing Plaintiffs' Complaint, the District Court relied heavily on two decisions from a district court judge in the Eastern District of Louisiana, and one unpublished decision from the Eastern District of Texas. *See Russell v. ChoicePoint Servs., Inc.*, 300 F. Supp. 2d 450 (E.D. La. 2004) (*Russell I*); *Russell v. ChoicePoint Servs., Inc.*, 302 F. Supp. 2d 654 (E.D. La. 2004) (*Russell II*); *Taylor v. Acxiom Corp.*, No. 2:07-cv-0001 (E.D. Tex. Sept. 8, 2008) (available at D.E. #13-2). These cases—and their rationale that the defendants in each case were authorized recipients under the DPPA—are distinguishable, and were in fact distinguished by the *Roberts* court. *See Roberts*, 2008 WL 5234675, at *4 ("The *Russell* court's

19

interpretation of section 2721(c) is inconsistent with the plain language of the DPPA, which makes it unlawful for business entities to 'obtain . . . personal information . . . for any use not permitted under section 2721(b)[.]'") (citing 18 U.S.C. § 2722). *Russell I*, *Russell II*, and *Taylor* all employed the same flawed reasoning—that if Congress had intended that authorized recipients also use the information under one of the exceptions listed in § 2721(b), it could have written the statute to reflect that. S.A.6-7. These decisions, relied upon by the District Court, are contrary to the plain language and import of the DPPA, and as such a misinterpretation of the DPPA that should not be followed here.

E. The District Court's Other Points in Support of its Dismissal of Plaintiffs' Complaint Do Not Obviate the Fact that West Publishing Violated the DPPA.

In dismissing Plaintiffs' complaint, the District Court noted that under Plaintiffs' reading of the DPPA, "many crucial government and legitimate business efforts, including criminal investigations, consumer protection, and driver safety, would be thwarted."[3] S.A.10. The District Court provides no explanation for this conclusion, however. Moreover, the District Court's conclusion is belied by the fact that each state's department of motor vehicles is the appropriate database for such information, and Congress has made it clear that no one can obtain this Personal Information without meeting one of the statutorily proscribed exceptions set forth in the DPPA. Any other reading makes the statute and its purpose ineffective. Any

---

[3] The District Court also points to a 1998 letter from the United States Department of Justice in support of its position that Defendant is authorized to obtain individuals' Personal Information. S.A.9, n.4. But, the letter also unequivocally states that it is "merely advisory," and that "[i]t is not binding upon the U.S. Attorney General and should not be construed as creating any substantive rights or benefits under the law." *See* D.E. #13-2.

individual could obtain from the state the Personal Information of any number of individuals under the guise of being a "re-seller" and, in fact, create a simple website (even overseas beyond the reach of justice) offering to sell that information to people who fill out some forms. Rather than protecting Personal Information, the District Court's broadening of the statute could lead to a more widespread dissemination of Personal Information without the intended protections of governmental oversight.

The District Court cannot ignore the plain fact that obtainment of Personal Information in bulk form, in the absence of meeting one of the DPPA's express exceptions, is a violation of the DPPA.

The District Court's vague averment to the impact on West Publishing of the DPPA's liquidated damages provision—should it be found liable for violating the statute and have to pay these damages to Plaintiffs and other putative Class members—is irrelevant. S.A.10-11. "The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Bedroc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (internal quotations omitted). Under the clear language of the DPPA, Congress provides for liquidated damages; no further inquiry or analysis is necessary.

Additionally, the Court has expressly held that statutory damages similar to those in the DPPA are permissible. *Murray v. GMAC*, 434 F.3d 948, 953 (7th Cir.

2006) (reversing denial of class certification even though the defendant faced billions of dollars in damages for violations of the Fair Credit Reporting Act, and holding that "[t]he reason that damages can be substantial . . . does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1000 per person."). This is strictly a case of applying the plain language of the DPPA to West Publishing's conduct. Neither West Publishing, nor the District Court, can ignore or complain about the clear statutory damages made available under the DPPA for violations of the statute. *See, e.g., Irvine v. 233 Skydeck, LLC*, 597 F. Supp. 2d 799, 805 (N.D. Ill. 2009) ("[T]he mere possibility of an excessive statutory and punitive damages award under FACTA does not constitute a due process violation and does not require dismissal of the complaint.") (citing *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 839 (N.D. Ill. 2008); *Harris v. Best Buy Co.*, 254 F.R.D. 82, 90 (N.D. Ill. 2008); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 216 (N.D. Ill. 2008); *Follman v. Village Squire, Inc.*, 542 F. Supp. 2d 816, 821–22 (N.D. Ill. 2007)).

## II. The District Court Erred in Dismissing Plaintiffs' Unjust Enrichment and Injunctive Relief Claims.

In *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, the Illinois Supreme Court held that "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." 131 Ill. 2d 145, 545 N.E.2d 672, 679 (1989).

As enumerated above, under the plain language of the DPPA, West Publishing cannot be an authorized recipient because it obtained Plaintiffs' Personal Information as part of a bulk database and in a manner that fails to meet any of the exceptions stated in § 2721(b). West Publishing's conduct constitutes a violation of the DPPA. And by violating the DPPA, West Publishing has received a benefit from Plaintiffs—obtaining and selling their Personal Information for a profit and without their consent—to their detriment. Further, Plaintiffs have been damaged by this conduct by way of having their Personal Information and privacy compromised as a result of West Publishing's repeated and continuing violations of the DPPA. Compl. at ¶¶35–38. Such conduct clearly violates fundamental principles of justice, equity, and good conscience, and is precisely why Plaintiffs' claim for injunctive relief is also proper—West Publishing continues to violate the DPPA by obtaining individuals' Personal Information as part of a bulk database, which is not one of the express exceptions listed in § 2721(b). Compl. at ¶¶41–43. West Publishing's conduct in this regard must end.

### III. The District Court Had Subject Matter Jurisdiction Over Plaintiffs' Claims.

In finding that West Publishing did not violate the DPPA, the District Court then found that Plaintiffs lacked standing and dismissed their Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. But the DPPA was enacted to restrict States' abilities to disclose the personal information of drivers without their consent. *Reno v. Condon*, 528 U.S. 141, 144 (2000). And the DPPA explicitly states that any "person who knowingly obtains, discloses or uses personal

information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action . . . ." 18 U.S.C. § 2724(a). Courts have recognized the significance of this provision:

> The DPPA is designed to protect personal information. It protects drivers' privacy by placing restrictions on the purposes for which personal information may be obtained, used, and disclosed. The Complaint's allegations that the Defendants unlawfully obtained Plaintiffs' highly restricted personal information, in violation of their privacy rights under the DPPA, suffice to establish injury-in-fact. Under the DPPA, "improperly obtaining [a] plaintiff's information [*is*] an injury."

*Roberts*, 2008 WL 5234675, at *5 (quoting *Parus v. Allstate Ins. Co*, 2005 WL 2240955, at *5 (W.D. Wis. Sept 14, 2005) (internal citations omitted) (emphasis in original).

In fact, the Seventh Circuit squarely addressed this issue in *McCready v. White*, 417 F.3d 700, 702–03 (7th Cir. 2005), holding that the district court below had subject matter jurisdiction over the plaintiff's claims under the DPPA:

> Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of federal subject-matter jurisdiction. Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit. See *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998). It is not hard to see a source of federal jurisdiction, however. McCready makes a claim that rests entirely on federal law, and 28 U.S.C. § 1331 supplies jurisdiction to entertain such claims. That McCready's theory may be bad substantively does not negate that jurisdiction. See *Bell v. Hood,* 327 U.S. 678 (1946). Although some language in *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, (1986), might have been read to imply that the existence of a private right of action under federal law is essential to jurisdiction, the opinion in *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005), puts the kibosh on that possibility. The district court had jurisdiction.

Likewise, other courts have recognized subject matter jurisdiction exists under allegations similar or identical to Plaintiffs' allegations here. *See, e.g., Wiles*, 2010 WL 1463025, at *3 ("In the DPPA, Congress gave individuals the right to be free from having their records knowingly obtained for an impermissible purpose. *See* 18 U.S.C. §§ 2721, 2724(a). In fashioning the DPPA, Congress created a right to privacy, the invasion of which creates an injury sufficient to create standing.") (citing *Pichler*, 542 F.3d at 388 (recognizing that the DPPA protects the privacy rights of individuals)); *Parus v. Cator*, No. 05-C-0063-C, 2005 WL 2240955, at *5 (W.D. Wis. Sept. 14, 2005) (finding that improperly obtaining personal information was an injury for purposes of a DPPA claim)). The District Court and this Court have subject matter jurisdiction over Plaintiffs' claims, as West Publishing unlawfully obtained Plaintiffs' Personal Information. *See Pichler*, 542 F.3d at 391 ("The DPPA thus confers a cause of action to 'the individual' whose personal information from their motor vehicle records is at issue."). Despite the District Court's conclusion to the contrary, Plaintiffs have standing here, and West Publishing's motion to dismiss pursuant to Rule 12(b)(1) should have been denied.

**Conclusion**

Plaintiffs sufficiently allege that West Publishing violated the DPPA when it obtained their Personal Information as part of a bulk database. Because West Publishing obtained said information without meeting any of the DPPA's statutory exceptions for doing so, it is not an authorized recipient of Plaintiffs' Personal Information. Plaintiffs respectfully request that the Court reverse the District Court's dismissal of Plaintiffs' Complaint.

Dated: April 26, 2010

Lisa M. Graczyk, Matthew M. Jorge, and Brian Willingham, on behalf of themselves and all others similarly situated,

By: ___/s/ Ben Barnow_____

Ben Barnow
Barnow and Associates, P.C.
1 North LaSalle Street, Suite 4600
Chicago, IL 60602
(312) 621-2000

*Attorneys for Plaintiffs-Appellants*

Aron D. Robinson
The Law Office of Aron D. Robinson
19 South LaSalle Street
Suite 1200
Chicago, IL 60603
(312) 857-9050

*Of Counsel:*

Ralph K. Phalen Atty. at Law
1000 Broadway, Suite 400
Kansas City, Missouri 64105
(816) 589-0753

Mitchell L. Burgess
Keith C. Lamb
1000 Broadway, Suite 400
Kansas City, Missouri 64105
(816) 471-1700

Don P. Saxton
1000 Broadway, Suite 400
Kansas City, Missouri 64105
(816) 471-1700

**Certificate of Compliance**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

 X  this brief contains  6916 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

__this brief uses a monospaced typeface and contains [state the number of ] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

 X  this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in size 12 font with Arial type style for all headings and Century type style for all other text, or

__this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Dated:  April 26, 2010


   /s/ Sharon Harris_____
One of the Attorneys for Plaintiffs-Appellants

**PROOF OF SERVICE**

The undersigned certifies that on April 26, 2010, I mailed via Federal Express fifteen copies of the Brief and Required Short Appendix of Plaintiffs-Appellants to the Clerk of Court, United States Court of Appeals for the Seventh Circuit, and that I caused two copies of Brief and Required Short Appendix of Plaintiff-Appellant to be served upon counsel for West Publishing:

Diane Green-Kelly, Esq.
Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606

via Federal Express on this 26th day of April 2010.

 /s/ Sharon Harris_____
One of the Attorneys for Plaintiffs-Appellants

**Circuit Rule 30(d) Statement**

The undersigned hereby certifies that pursuant to Circuit Rule 30(d), the following Appendix contains all judgments or orders under review, and any opinion, memorandum of decision, finding of fact and conclusions of law, or oral statement of reasons delivered by the trial court, and specifically includes the following:

Memorandum Opinion and Order (Gettleman, J., Dec. 23, 2009)

Minute Entry (Gettleman, J., Dec. 23, 2009)

 /s/ Sharon Harris
One of the Attorneys for Plaintiffs-Appellants

30

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA M. GRACZYK, MATTHEW M. JORGE,        )
and BRIAN WILLINGHAM, individually and     )
on behalf of others similarly situated,    )
                                           )
            Plaintiffs,                    )        No. 09 C 4760
      v.                                   )
                                           )        Judge Robert W. Gettleman
WEST PUBLISHING CORP., a Minnesota         )
Corporation,                               )
                                           )
            Defendant.                     )

## MEMORANDUM OPINION AND ORDER

Lead plaintiffs Lisa M. Graczyk, Matthew M. Jorge, and Brian Willingham have brought

a three count putative class action complaint against defendant, West Publishing Corporation,

alleging violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2722 *et seq*.,

(Count I), unjust enrichment (Count II), and a claim for injunctive relief (Count III).  Defendant

has moved to dismiss the entire complaint for failure to state a claim under Fed. R. Civ. P.

12(b)(6) and for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).  For the reasons explained

below, defendant's motions are granted.

## BACKGROUND

Plaintiffs allege that defendant acquired motor vehicle records and the corresponding

"personal information" and/or "highly restricted personal information" of millions of licensed

drivers, including plaintiffs, from the department of motor vehicles of various states[1] (and/or

---

[1]   Lead plaintiffs are citizens of the State of Illinois and licensed to drive in Illinois.
Class members are individuals were licensed to drive in the States of Alabama, Alaska,
Colorado, Connecticut, Florida, Idaho, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland,
Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Mexico,

entities that acquired this information from those states) under the pretense that the data would

be used only for legitimate purposes outlined in the DPPA.  Defendant then allegedly made the

information in the records available for search and sale on the internet.


## DISCUSSION

### I.  Driver's Privacy Protection Act

State Departments of Motor Vehicles ("DMVs") require drivers and motor vehicle

owners to supply personal information, such as their names, addresses, telephone numbers,

Social Security numbers, photographs, medical conditions, and vehicle descriptions when

applying for a driver's license or registering a vehicle.  Reno v. Condon, 528 U.S. 141, 143

(U.S. 2000).  In 1993 Congress enacted the Driver's Privacy Protection Act ("DPPA") to protect

these individuals' privacy by setting limits on how state DMVs can share this personal

information.[2]

The DPPA generally prohibits state DMVs, their officers, employees, or contractors from

"knowingly disclos[ing] or otherwise mak[ing] available to any person or entity personal

information . . .  or highly restricted personal information about any individual obtained by the

department in connection with a motor vehicle record."[3]  18 U.S.C. § 2721(a).  The DPPA also

_____

New York, North Dakota, Ohio, Tennessee, Texas, Utah, Wisconsin, Wyoming, and the District
of Colombia.

[2]    Congress passed the DPPA as an amendment to the Violent Crime Control and Law
Enforcement Act of 1993 in response to nationwide reports of perpetrators obtaining with
relative ease the personal information of their victims from state DMV records.  The most
infamous of these incidents was the 1989 murder of a young actress named Rebecca Schaeffer.
Schaeffer was killed in the threshold of her Los Angeles apartment by an obsessed fan who had
obtained her address, via a private investigator, from the California DMV.

[3]    "Personal information" is defined as "information that identifies an individual,
including an individual's photograph, social security number, driver identification number,

provides a private right of action whereby:  "[A] person who knowingly obtains, discloses or

uses information, from a motor vehicle record, for a purpose not permitted under this chapter

shall be liable to the individual to whom the information pertains, who may bring a civil action

in a United States District Court." 18 U.S.C. § 2724(a).

The DPPA's general prohibition on disclosure of personal information is subject to 14

exceptions which allow for the limited disclosure of personal information.  18 U.S.C. § 2721(b)

provides:

> Permissible Uses - Personal information referred to in subsection (a) shall be
> disclosed for use in connection with matters of motor vehicle or driver safety and
> theft, motor vehicle emissions, motor vehicle product alterations, recalls, or
> advisories, performance monitoring of motor vehicles and dealers by motor
> vehicle manufacturers, and removal of non-owner records from the original owner
> records of motor vehicle manufacturers to carry out the purposes of titles I and IV
> of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act
> (15 U.S.C. 1231 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and chapters
> 301, 305, and 321-331 of title 49, and, subject to subsection (a)(2), may be
> disclosed as follows:
>     (1) For use by any government agency, including any court or law enforcement
> agency, in carrying out its functions, or any private person or entity acting on
> behalf of a Federal, State, or local agency in carrying out its functions.
>     (2) For use in connection with matters of motor vehicle or driver safety and
> theft; motor vehicle emissions; motor vehicle product alterations, recalls, or
> advisories; performance monitoring of motor vehicles, motor vehicle parts and
> dealers; motor vehicle market research activities, including survey research; and
> removal of non-owner records from the original owner records of motor vehicle
> manufacturers.
>     (3) For use in the normal course of business by a legitimate business or its
> agents, employees, or contractors, but only--
>         (A) to verify the accuracy of personal information submitted by the individual
> to the business or its agents, employees, or contractors; and
>         (B) if such information as so submitted is not correct or is no longer correct,
> to obtain the correct information, but only for the purposes of preventing fraud by,

---

name, address (but not the 5-digit zip code), telephone number, and medical or driving
violations, and driver's status."  "Highly restricted personal information" is defined as "an
individual's photograph or image, social security number, medical or disability information."

pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

(4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

(5) For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

(7) For use in providing notice to the owners of towed or impounded vehicles.

(8) For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.

(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49 [49 USCS §§ 31301 et seq.].

(10) For use in connection with the operation of private toll transportation facilities.

(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

(13) For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

In addition, § 2721(c) of the DPPA permits "authorized recipient[s]" of personal

information to resell or redisclose this information:

(c) Resale or redisclosure. An authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or redisclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b) (11) or (12)). An authorized recipient under subsection (b)(11) may resell or redisclose personal information for any purpose. An authorized recipient under subsection (b)(12) may resell or redisclose personal information pursuant to subsection (b)(12). Any authorized recipient (except a recipient under subsection

(b)(11)) that resells or rediscloses personal information covered by this chapter [18 USCS §§ 2701 *et seq.*] must keep for a period of 5 years records identifying each person or entity that receives information and the permitted purpose for which the information will be used and must make such records available to the motor vehicle department upon request.

The complaint is based on the principal allegation that defendant is not an "authorized recipient" because authorized recipients are limited to those who have a permissible use for the information as provided by § 2721(b). Notably, the DPPA does not define "authorized recipient." Defendant has moved to dismiss the complaint for lack of standing under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Because the standing inquiry is dependent on the outcome of the court's analysis of the Rule 12(b)(6) motion, the court will consider the latter issue first.

## II. Motion to Dismiss Count I

### A.  Rule 12(b)(6)

Ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claims rest. The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-73, 167 L.Ed.2d 929 (2007).

Plaintiffs allege that defendant obtained, disclosed, and used their personal information for a purpose not permitted under the DPPA, namely resale of drivers' personal information for a

5

profit without their consent.  Under their reading of the statute, an "authorized recipient" is a recipient with at least one of the permissible uses listed in § 2721(b).  Defendant argues that the plain language of § 2721(c) clearly contradicts any intent by Congress to prohibit a data aggregator, like defendant, to obtain and resell plaintiffs' personal information as an authorized recipient.  According to defendant, it qualifies as an "authorized recipient" despite not having a "permissible use" listed in § 2721(b) because Congress did not specify that "authorized recipients" must be "permissible users."  Defendant further argues that it never "used" plaintiffs' personal information because it merely facilitated the process by which persons and entities with permissible uses gained access to the information.  Finally, defendant cites numerous policy reasons in support of its interpretation of the DPPA's language.  The court will consider each argument in turn, starting with a statutory analysis of the term "authorized recipients."

*1. Language of the Statute*

The court begins with the language of the DPPA itself.  Perrin v. United States, 444 U.S. 37, 42 (1979).  It is a fundamental canon of statutory construction that, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Id.  Although the statute does not provide a definition of "authorized recipient," the meaning of the term can readily be inferred from its ordinary meaning and the context in which it appears. Read in the context of the DPPA, "authorized recipient" unambiguously refers to an individual or entity authorized to receive personal information for sale or resale.

This interpretation is embraced in the majority of federal court decisions that have already considered this issue.  See Russell v. ChoicePoint Services, Inc. 300 F. Supp. 2d 450

6

S.A.6

(E.D. La. 2004)("Russell I"); <u>Russell v. ChoicePoint Services, Inc.</u>, 302 F. Supp. 2d 654 (E.D. La. 2004)('Russell II") (reaffirming analysis of <u>Russell I</u>); <u>Taylor v. Acxiom Corporation</u>, 2:07-cv-0001 (E.D. Tex. Sept. 8, 2008)(same). The plaintiff in <u>Russell I</u> alleged that the defendant had illegally obtained personal information from the Louisiana DMV for the impermissible purpose of disclosure and distribution by resale. The <u>Russell I</u> court dismissed the claim under Rule 12(b)(6) on the ground that if the defendant (a data aggregator) was an "authorized recipient" of the plaintiff's personal information, then resale of this information to an entity with a permissible use was itself permitted under 2721(c). The court also held that "[t]he plain language of the DPPA permits entities like [defendant] to obtain drivers' personal information" to "subsequently resell that information to third parties with a permissible use." <u>Russell I</u>, 300 F. Supp. 2d at 455. In reaching its decision, the <u>Russell I</u> court engaged in a lengthy analysis, distinguishing the dictionary definition of the words "recipient" and "user," and concluded that "[i]f Congress had intended to require that the 'authorized recipient' of personal information also be a user of that information, it could have written the DPPA exceptions explicitly to that effect." <u>Id.</u> at 457. The court agrees.

The DPPA is written to restrict uses of personal information rather than users of that information. In keeping with this use-based orientation, Section 2721(c) unambiguously allows for resale or redisclosure of personal information for uses permitted under section 2721(b). The only restriction on resale or redisclosure is that it must be done by an authorized recipient. Because the DPPA is silent on who may be designated as an authorized recipient and nothing in the text of the requires that such a recipient also have a permissible use, the logical conclusion is that individual states can make this designation. While it may be conceivable that Congress

could have deliberately intended "authorized recipient" to mean "authorized user," this interpretation becomes untenable when the overall statutory scheme is considered.

## 2. Legislative History and Policy Considerations

"When statutory language is unambiguous, it is presumed to express the legislative purpose and resort to the legislative history is not necessary." United States v. One Parcel of Real Estate Commonly Known as 916 Douglas Ave., 903 F.2d 490, 493 (7th Cir. 1990) (citing American Tobacco Company v. Patterson, 456 U.S. 63, 68, 71 L. Ed. 2d 748, 102 S. Ct. 1534 (1982)).  Nonetheless, the court may look beyond the express language of the statute to give force to Congressional intent "where a literal interpretation would thwart the purpose of the over-all statutory scheme or lead to an absurd result." United States v. Tex-Tow, Inc., 589 F.2d 1310, 1313 (7th Cir. 1978) (quoting International Telephone and Telegraph Corporation v. General Telephone & Electronics Corp., 518 F.2d 913, 917-918 (9th Cir. 1975).

Defendant argues that "subjecting a company to potential billion-dollar liability when it merely helped accomplish the lawful use of information is an absurd result."  It also argues that the DPPA expressly permits the resale of personal information and does not require resellers to have their own permissible use in order to obtain personal information for resale.  Defendant further contends that "plaintiff's interpretation of § 2721(c) -- that resellers need their own permissible uses to obtain data -- would render § 2721(c) meaningless."

Specifically, defendant argues that the Congressional Record clearly reflects Congress' intention to restrict disclosure of personal information only for reasons totally incompatible with the reasons for which it was collected.  It contends that defendant's resale and redisclosure of the

plaintiffs' personal information was compatible with the authorized purposes because it was ultimately released only to persons or entities with permissible uses under the DPPA.  Defendant again relies on <u>Russell I</u>, where the court dismissed a similar claim noting that if a bulk purchaser is an "authorized recipient" of the information, then resale to a person with a permissible use is itself permitted.[4]  The gravamen of defendant's argument is that state-authorized bulk purchasers can obtain drivers' personal information for resale or redistribution to other entities with a permissible use under § 2721(b), but not for its own use.  Under this reading of the statute, obtaining and reselling the data do not qualify as "uses" of the information.  The court agrees.

A thorough review of the Congressional Record strongly suggests that a literal interpretation, as discussed above, would thwart the purpose of the over-all statutory scheme and lead to absurd results.  The comments made during the Senate and House debates of the DPPA indicate a clear intention to prevent unfettered access to personal information and to give individuals more control over the disclosure of their personal information, while continuing to allow state DMVs to disclose the information for legitimate government and business needs.  Various senators and representatives, including the amendment's sponsors, further

---

[4]  Defendant also draws the court's attention to a private opinion letter authored by the U.S. Department of Justice ("DOJ") in response to an inquiry from the Massachusetts Registry of Motor Vehicles ("RMV") inquiring "whether [the DMV] may release information to a commercial distributor who disseminates that information only to other authorized recipients or entities that use the information solely for authorized purposes." In analyzing the DPPA, DOJ reasoned that the several provisions of the statute "regulated only the ultimate use of the personal information without specifying or restricting who may obtain the information in order to accomplish that authorized purpose."  DOJ concluded that if the RMV could reasonably conclude that the personal information would be used ultimately for authorized purposes only, it could release the information to a commercial distributor.

acknowledged that the DPPA was intended to allow state DMVs to continue selling personal information to direct marketers so long as individuals are given the opportunity refusing to allow the state to sell their personal information for "reasons that are totally incompatible with the purpose for which the information was collected."  139 Cong. Rec. S15745-01, S15763 (Nov. 16, 1993)(statement of Senator Boxer).  These concerns are explicitly reflected in the final text of §§ 2721b(11) and b(12) as consent clauses.  The emphasis of the consent clauses was to allow individuals a measure of control over the disclosure of their personal information for uses unrelated to the purpose(s) for which it was collected."  139 Cong. Rec. S15745-01, S15763 (Nov. 16, 1993)(statement of Senator Warner).  In keeping with this intention to ensure that data is only sold or redisclosed to individuals or entities with permissible uses, § 2721(c) provides the additional safeguard that authorized recipients must keep records of the persons and entities that receive the information and the permitted purposes for which the information will be used.

Additionally, although not binding authority, the court notes that the DOJ and numerous states, including Illinois, have interpreted the DPPA to allow DMVs to authorize data aggregators to receive and resell data to facilitate efficient compilation and dissemination of personal information between and among users with permissible purposes across the country.  If the court were to read the statute as barring data aggregators from reselling and redisclosing personal information to entities with permissible uses, many crucial government and legitimate business efforts, including criminal investigations, consumer protection, and driver safety, would be thwarted.

Moreover, if defendant was found liable for obtaining plaintiffs' and class members' personal information without a permissible use, its liability under § 2724 would potentially be in

the billions of dollars in liquidated damages.  This is an absurd result not in keeping with the

plain language, intent, or spirit of the DPPA.  Having considered the clear legislative intent of

Congress is passing the DPPA, the purpose of the over-all statutory scheme, the court grants

defendant's motion to dismiss Count I for failure to state a claim.


**B. Rule 12(b)(1)**

      Defendants have also moved to dismiss the complaint pursuant to Fed. R. Civ. P.

12(b)(1) arguing that because plaintiffs have not alleged that they suffered any actual injury in

fact, the court lacks subject matter jurisdiction over their DPPA claims.

      To establish standing, a plaintiff must show: (1) injury in fact, meaning an invasion of a

legally protected interest that is concrete and particularized, actual or imminent, and not

conjectural or hypothetical; (2) a causal connection between the injury and the conduct

complained of such that the injury is fairly traceable to the defendant's actions; and (3) that a

favorable decision is likely to redress the injury.  Tobin for Governor v. Ill. State Bd. of

Elections, 268 F.3d 517, 527-28 (7th Cir. 2001) (citing Lujan v. Defenders of Wildlife, 504 U.S.

555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).  Abstract injury is not enough to

establish injury in fact; the plaintiff must establish that he has sustained or is immediately in

danger of sustaining some direct injury.  See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02,

103 S. Ct. 1660, 75 L. Ed. 2d 675 (1993).

      The complaint alleges that defendant obtained and disseminated plaintiffs' and proposed

Class members' personal information and/or highly restricted personal information for search

and sale on the internet in violation of the DPPA.  In light of the discussion above, these

allegations fall woefully short of establishing standing.  First, because plaintiffs have not alleged

or pled any facts showing that defendant improperly obtained and/or used their personal

information, plaintiffs have failed to show that they have suffered an injury-in-fact.  Second,

plaintiffs have not pled a causal connection between defendant's alleged violations of the DPPA

and the alleged harm plaintiffs' suffered.  Finally, plaintiffs have failed to demonstrate that a

favorable decision in the instant case is likely to redress their alleged injury.   Accordingly,

plaintiffs' have failed to establish standing, and defendant's motion to dismiss pursuant to

12(b)(1) is granted.


**III.  Motion to Dismiss Count II - Unjust Enrichment**

Defendant has moved to dismiss Count II of the complaint under Fed. R. Civ. P. 12(b)(6)

arguing that plaintiffs do not and cannot explain how they have suffered any detriment as a result

of defendant's resale of their personal information to entities with permissible uses.

Under Illinois law, "to state a cause of action based on a theory of unjust enrichment, a

plaintiff must allege facts supporting the conclusion that the defendant unjustly retained a benefit

to the plaintiff's detriment, and that the defendant's retention of the benefit violates the

principles of justice, equity, and good conscience."  HPI Health Care Services, Inc. v. Mt.

Vernon Hospital, Inc., 131 Ill. 2d 145, 160 (Ill. 1989).   Additionally, there must be an

independent basis that establishes a duty on the part of the defendant to act and the defendant

must have failed to abide by that duty.  Martis v. Grinnel Mut. Reinsurance Co., 388 Ill. App. 3d

1017, 1025 (2009).

Plaintiffs have alleged that pursuant to the DPPA defendant had a duty to refrain from obtaining their personal information for an impermissible use, and that defendant financially benefited to plaintiffs' detriment when it violated this duty by acquiring plaintiffs' personal information and selling it on the internet for a profit. However, as discussed above, even if defendant had a duty to refrain from obtaining plaintiffs' personal information for an impermissible use, plaintiffs cannot show that defendant unjustly retained a benefit to plaintiffs' detriment because plaintiff fails to show that defendant was not an authorized recipient under the DPPA. As such, plaintiffs have failed to alleged the requisite elements of an unjust enrichment claim, and defendant's motion to dismiss Count II is granted.

## IV. Motion to Dismiss Count III - Injunctive Relief

Defendant seeks dismissal of Count III of the complaint because injunctive relief is a remedy and not a stand-alone cause of action. The court agrees. Moreover, to the extent that plaintiffs' request is for post-judgment relief, the request for equitable relief fails because all other counts of the complaint have been dismissed. Consequently, defendant's motion to dismiss Count III is granted.

## <u>CONCLUSION</u>

For the reasons discussed above, defendant's motion to dismiss the entire complaint is granted.

**ENTER:**         **December 23, 2009**

_Robert W. Gettleman_
_____
**Robert W. Gettleman**

13

**United States District Judge**

14

2rder Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 4760 | **DATE** | 12/23/2009 |
| **CASE TITLE** | Lisa M. Graczyk, et al | vs | West Publishing Corp. |

**DOCKET ENTRY TEXT:**

Memorandum opinion and order entered.
Accordingly, defendant's motion [12] to dismiss the entire complaint is granted.
Status hearing date of 1/14/2010 is stricken.

[For further detail see separate order]
[Docketing to mail  notice]

00:00

| | Courtroom Deputy | GDS |
|---|---|---|

S.A.15